IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ELIZABETH H. MCKENNA and<br>JOHN J. MCKENNA, her husband,<br>Plaintiffs, | :<br>:<br>:<br>: | C.A. No. 05-425 GMS |
| v. | : | |
| NCL AMERICA INC.,<br>a corporation of the State of Delaware,<br>and NCL CORPORATION LTD.,<br>a foreign corporation,<br>Defendants. | :<br>:<br>:<br>:<br>:<br>: | |

### DECLARATION OF DANIEL S. FARKAS IN SUPPORT OF DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO THE MOTION TO DISMISS FILED BY DEFENDANTS NCL AMERICA INC. AND NCL CORPORATION LTD.

I, Daniel S. Farkas, declare as follows:

1.  My name is Daniel S. Farkas. I am the Vice President, Assistant General Counsel of defendant NCL (Bahamas) Ltd., d/b/a NCL ("NCL (Bahamas)"). I am authorized to make this declaration on behalf of NCL (Bahamas) in support of the Defendants' Reply to Plaintiffs' Response to the Motion to Dismiss filed by Defendants NCL America Inc. ("NCL America") and NCL Corporation Ltd. ("NCL Corporation"). I am over eighteen years of age and am competent to make this declaration. I have personal knowledge of the facts stated in this declaration and, if called upon to do so, could and would testify competently to them.

2.  NCL America and NCL Corporation contend that they are not the proper defendants in this action because, among other things, they do not own the cruise ship, *M/S NORWEGIAN CROWN*, on which plaintiffs complain the injury occurred. The *M/S NORWEGIAN CROWN* is owned by Crown Odyssey Limited, a Bermuda

corporation with its principal place of business at Canon's Court, 22 Victoria Street, Hamilton, HM12 Bermuda.

    3.    The Passenger Ticket Contract (attached hereto as <u>Exhibit "1"</u>)) issued to plaintiffs is a standard, form contract that is used by both NCL (Bahamas) and NCL America. The definition of the term "Carrier" in paragraph 1 of the Passenger Ticket Contract includes both NCL (Bahamas) Ltd., d/b/a NCL <u>and</u> NCL America. The purpose for defining "Carrier" as both NCL (Bahamas) and NCL America is so that the separate companies may both use the standard Passenger Ticket Contract in connection with cruises that they manage and operate. By having a single, form contract that is available for use by both NCL (Bahamas) and NCL America, printing costs can be reduced and standardized language may be employed. The definition of "Carrier" as set forth in paragraph 1 of the Passenger Ticket Contract is not intended to, and does not, define NCL (Bahamas) as doing business as both NCL and NCL America. In fact, NCL (Bahamas) does <u>not</u> do business as NCL America, and the two companies are separate corporations maintaining all requisite corporate formalities. Instead, because the Passenger Ticket Contract is a standard, form agreement, used by both NCL (Bahamas) and the separate corporation, NCL America, it is necessary to refer to both of them in the definition, but "Carrier" is defined as "NCL (Bahamas), Ltd. d/b/a NCL" and <u>separately</u> as NCL America. The proper name of NCL (Bahamas) is "NCL (Bahamas) Ltd. d/b/a NCL." Thus, the "d/b/a" notation in paragraph 1 of the Passenger Ticket Contract is limited to NCL (Bahamas) and does not indicate, as plaintiffs incorrectly assume, that "Carrier" is defined as NCL (Bahamas) **doing business as both** NCL and NCL America.

To the contrary, "Carrier" is defined to include "NCL (Bahamas) Ltd. d/b/a NCL" and separately defined to also include NCL America.

I swear under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I executed this Declaration in on August 22, 2005 in Miami, Florida.

                                                                DANIEL S. FARKAS

# Exhibit "1"



7665 Corporate Center Drive
Miami, Florida 33126

**Passenger Ticket Contract**
Cruise Ticket
Do Not Separate Until Pier Check-In

ENTERED

NORWEGIAN CROWN     SAILING: Apr 25, 2004     RESERVATION: 10498813
YOUR CRUISE-MAIL ADDRESS: jmckenna8054@crown.cruisemail.net

STATEROOM: 8054
AFT
DINING: FREESTYLE

EMBARKATION/DEST: PHL/PHL

| | ADULTS: 2 | | INS | LATITUDES |
|---|---|---|---|---|
| JOHN MCKENNA | | US | Y | 200642047 |
| ELIZABETH MCKENNA | | US | Y | 200642049 |

GOV'T TAXES & FEES:     USD 216.70

AMBASSADOR TRAVEL
2003 CONCORD PIKE
WILMINGTON, DE 19803 US

JILL JILL
302-594-1010

FARES AS AGREED

**IMPORTANT NOTICE**
The Passenger's attention is specifically directed to the terms and conditions of this contract set forth within. These terms and conditions affect important legal rights and the passenger is advised to read them carefully.

04/03 Ship's Registry: Bahamas

To Be Presented for Passage

**IMPORTANT NOTICE:** Passengers are advised to carefully read the terms and conditions of the Passenger Ticket Contract set forth below which affect your legal rights and are binding. Acceptance or use of this Contract shall constitute the agreement of Passenger to these Terms and Conditions.

## NORWEGIAN CRUISE LINE
### Passenger Ticket Contract

1. For the purpose of this Contract the term "Carrier" shall include NCL (Bahamas) Ltd. d/b/a NCL and/or NCL America, its designees, assigns, successors or affiliates, the named vessel, any substituted vessel, and its or their tenders, launches and related facilities. The rights, defenses, immunities and limitations of liability set forth herein shall inure to the benefit of the Carrier and all concessionaires, independent contractors or other service providers; any affiliated or related companies, parents, subsidiaries, successors, assigns or fictitiously named entities; all suppliers, shipbuilders, component part manufacturers; and its or their owners, operators, managers, charterers, agents, pilots, officers, crew, and employees. The term "Passenger" shall include any person purchasing, accepting or using this Contract, on behalf of themselves or others in their care, including any accompanying minors, and any of their heirs, relatives, successors, assigns or representatives, regardless whether signed by or on his behalf. The fare includes only the transportation as specified herein, full board, and ordinary ship's food, but does not include spirits, wines, beer, sodas or mineral waters, nor charges for other incidental or personal services. The fare does not include government taxes and/or fees which may include, but are not limited to, any and all fees, charges and taxes imposed by U.S. and/or foreign governmental or quasi-governmental authorities including U.S. Customs fees, head taxes, inspection fees, air taxes incurred as part of a land tour, immigration and naturalization fees, harbor maintenance fees and Internal Revenue Service fees. This Contract shall be the entire agreement between the parties and supersedes all representations or conditions contained in Carrier's advertisements, notices, brochures or other literature and all promises and agreements made or claimed to have been made by anyone in connection with the cruise to the passenger or anyone representing him.

2. This ticket and Contract is valid only for the voyage specified on the preceding pages and for the person(s) named and cannot be transferred without Carrier's written consent. The fare paid shall be considered fully earned at the time of payment, or if not previously paid, then at the time payment is due or upon embarkation, whichever is sooner. Carrier shall not be liable to make any refund to passenger in respect of lost tickets or in respect of tickets wholly or partly not used by a passenger except as expressly set forth herein, any statute or other governmental regulation to the contrary notwithstanding.

3. Each passenger agrees to abide by all rules of the Carrier and its officers at all times and failure to do so may subject the passenger to disembarkation without any liability on the part of the Carrier for a refund or any other related expenses or losses to the passenger or any accompanying passenger whatsoever. A passenger under 21 years of age must be accompanied in the same or connecting stateroom by a passenger 21 years or older who expressly agrees to be responsible for the under 21 passenger throughout the cruise. This responsibility includes, but is not limited to, preventing the purchase or consumption of alcohol and preventing the violation of any ship rules. If the accompanying adult is not a spouse, parent or legal guardian, a notarized parental/guardian consent letter that authorizes the minor's travel and further authorizes medical treatment in case of an emergency, or certified copy of the marriage certificate, must be delivered to an NCL representative at the pier. Failure to produce such documentation at embarkation may result in boarding being denied with no refund provided. Passengers must be 21 years or older to purchase or consume alcohol or to engage in any form of gambling on the vessel.

4. Passenger is not allowed to bring on board the vessel without the previous written permission of the Carrier any intoxicating liquors or beverages, firearms, weapons of any kind, ammunition, explosive substances or any goods of a dangerous nature, nor animals of any kind, except service or guide animals, provided the passenger notifies Carrier prior to the cruise of his intention to bring such animal and agrees to accept sole responsibility for any expense, damage, injuries or losses associated with or caused by such animal.

5. Unless Passenger obtains prior written permission from Carrier, Passenger shall not solicit other passengers, Carrier's employees, personnel or agents during the voyage with respect to any professional, business, or commercial activity, for profit or otherwise. Failure to adhere to this prohibition may result in ejection from the vessel without liability of the Carrier to refund any portion of the fare or for any incidental costs whatsoever.

6. Carrier's responsibility shall never exceed the limitation of liability to which Carrier is entitled under applicable law. No undertaking, guaranty or warranty is given or shall be implied as to the seaworthiness, fitness, or condition of the vessel or any food, drink, medicine, or provisions supplied on board the vessel. In no event shall Carrier be liable for any incident arising outside the passenger areas of the vessel or the vessel itself, including, but not limited to those occurring ashore, on tenders not owned by the vessel, on or resulting from equipment not a part of the vessel, or upon docks or piers.

7. The passenger admits a full understanding of the nature and character of the vessel and assumes all risks of travel, transportation and handling of passengers and baggage. The passenger assumes the risk of and releases Carrier from liability for any injury, loss or damage whatsoever arising from, caused by or in the judgment of the Carrier or Master rendered necessary or advisable by reason of: any act of God or public enemies; force majeure; arrest; restraints of governments or their departments or under color of law; rulers or people; piracy; war; revolution; extortion; terrorist actions or threats; hijacking; bombing; threatened or actual rebellion, insurrection, or civil strife; fire, explosion, collision, stranding or grounding; weather conditions; docking or anchoring difficulty; congestion; perils of the sea, rivers, canals, locks or other waters; perils of navigation of any kind; lack of water or passageway in canals; theft; accident to or from machinery, boilers, or latent defects (even though existing at embarkation or commencement of voyages); barratry; desertion or revolt of crew; seizure of ship by legal process; strike, lockout or labor disturbance (regardless whether such strike, lockout or labor disturbance results from a dispute between the Carrier and its employees or any other parties); or from losses of any kind beyond the Carrier's control. Under any such circumstances the cruise may be altered, shortened, lengthened, or cancelled in whole or part without liability to the Carrier for a refund or otherwise.

Except as otherwise specified above, if the vessel does not sail on or about the scheduled or advertised date for any reason whatsoever, including fault of Carrier, Carrier shall have liberty to substitute any other vessel or means of transportation, regardless whether owned or operated by Carrier, and to re-berth passengers thereon or, at Carrier's option, to refund the passage money paid or a pro rata portion thereof without further liability for damages or losses of any kind whatsoever.

Carrier, in its sole discretion, shall have full liberty to proceed without pilots and tow and to assist vessels in all situations; to deviate from the direct or customary course for any purpose, including, without limitation, in the interest of passengers or of the vessel, or to save life or property; to put in at any unscheduled or unadvertised port; to cancel any scheduled call at any port for any reason and at any time before, during or after sailing of the vessel; to omit, advance or delay landing at any scheduled or advertised port; to put back to port of embarkation or to any port previously visited if Carrier shall deem prudent; to substitute another vessel or ports of call without prior notice and without incurring any liability to the passengers on account thereof for any loss, damage or delay whatsoever, whether consequential or otherwise.

Carrier shall have the absolute right, without liability for compensation to the passenger of any kind, to comply with governmental orders, recommendations or directions, including but not limited to those pertaining to health, security, immigration, customs or safety. In the case of quarantine, each passenger must bear all risks, losses and expenses caused thereby and will be charged for maintenance, payable day-by-day, if maintained on board the vessel for such period of quarantine. Passenger assumes all risks and losses occasioned by delay or detention howsoever arising. Costs connected with embarkation or debarkation of passengers and/or baggage and costs of transfer between vessel and shore as a result of the circumstances enumerated in this paragraph must be borne by the passenger.

8. (a) Whenever the term "baggage" is used herein, it shall mean only suitcases, valises, satchels, bags, hangers or bundles and their contents consisting of such personal wearing apparel, articles of personal adornment, toilet articles and similar personal effects as are necessary and appropriate for the purposes of the cruise, including all other personal property of the passenger not in a container. No tools of trade, household goods, computers, musical instruments, radios, televisions, electronic equipment, liquors, fragile items, bullion, jewelry, precious stones, money, documents, or other valuables of any description or such articles as are specified in 46 U.S. Code, Paragraph 181 shall be brought upon the vessel by passenger or contained in passenger's baggage, except under and subject to the terms of a special written contract entered into with the Carrier before embarkation upon application of the passenger. The passenger hereby warrants that no such articles have been carried on the vessel or are contained in any receptacle or container presented to the Carrier as baggage. Carrier shall not be liable for any loss of or damage to any of the above listed items, or perishable items, dentures, optical devices (including contact lenses), medications, cameras, recreational and/or sporting equipment, cash, securities or other negotiable instruments under any circumstances whatsoever, whether carried within the passenger's baggage or otherwise.

(b) It is stipulated that the aggregate value of all the passenger's baggage and any other property under this ticket does not exceed $100.00 and any liability of the Carrier or the vessel for any cause whatsoever with respect to said baggage shall not exceed such sum unless the passenger shall in writing specify its true value and pay to the Carrier before embarkation 5% of the excess of such value, in which case the Carrier's liability, if any, shall be limited to the actual damage sustained up to, but not exceeding such specified value.

(c) All disclaimers and limitations of liability contained herein shall apply to all valuables stored or accepted for storage by Carrier, including valuables stored with the Carrier in safety deposit boxes or security envelopes. Carrier cannot accept responsibility for and in no event shall be liable for loss or damage of valuables or other articles left in cabins, and in no event shall Carrier be liable for loss or damage to property of any kind not shown by the passenger to have occurred while in the Carrier's actual custody, or for normal wear and tear.

(d) Loss of or damage to baggage during loading or disembarking must be reported by the passenger to Carrier's personnel prior to debarking the U.S. Customs area; Carrier shall not be responsible for any such loss or damage which is not so reported. Liability, if any, for loss or damage to baggage occurring elsewhere than on board the vessel in connection with air, car, motor coach, ground transfers, porters, stevedores and/or hotels shall rest solely with the person or entity providing such services and passenger agrees that Carrier does not guarantee the performance of such services and shall not be liable in any respect or capacity for any such loss or damage. Carrier has an absolute right to transfer passenger and/or his baggage to other carriers, whether by water, rail or air, to or toward the ultimate destination. In the event such substituted passage is for the convenience of the Carrier, it shall be at Carrier's cost. Otherwise, it shall be at the cost of passenger.

9. In making any arrangements for the transportation of any passenger or his or her baggage by any other carrier, connecting carrier or otherwise; or for shore accommodations, excursions, victualing, amusement or entertainment for any passenger; or for any other service or facility whatsoever for any passenger; or if the vessel carries a surgeon, physician, barber, hairdresser, manicurist, or any individual or entity providing personal services; or if the vessel requests emergency medical transportation or emergency medical care for the passenger on his behalf ; it is understood and agreed that Carrier does so solely for the convenience of the passenger, does not act on behalf of or supervise the parties or persons who own, furnish or operate such services or facilities, and that the same are provided by independent contractors who work directly for the passenger and are subject to such terms, if any, appearing in the tickets, vouchers or notices of such party or parties. Such parties or persons, in dealing with the passenger, are not and shall not be considered in any respect whatsoever as employees, servants or agents of the Carrier. Each such person, party or entity shall be entitled to make a proper charge for any service performed for or on behalf of the passenger and the cost of such service, including, but not limited to physicians, surgeons, hospitals, medications, diagnostic facilities, air ambulance evacuation or ground ambulance, shall be the sole responsibility of the passenger. Passenger hereby agrees to reimburse and indemnify Carrier for any funds advanced on account of any such charges. Carrier assumes no responsibility nor guarantees the performance of any such person, party, contractor, service or facility, or those under their orders or assisting them with respect to any diagnosis, medication, treatment, advice, services or care of any kind given to any passenger. Carrier shall not be liable for the act, neglect, default or omission of any party in respect to any events, matters or things other than as set forth herein.

10. No suit, including without limitation suits brought in rem and in personam, shall be maintained against the Carrier for emotional or physical injury, illness or death of passenger unless written notice of the claim with full particulars be delivered to the Carrier within six (6) months from the day when such injury, illness or death occurred; and in no event shall any suit be maintainable unless commenced within one (1) year from the day when the injury, illness or death occurred, notwithstanding any provision of law of any state or country to the contrary. No suit involving any other manner of claim, legal theory, or cause of action whatsoever arising from, connected with or related to this Contract or the cruise, including but not limited to claims for loss or damage to baggage, or for delay, detention or otherwise, shall be maintainable against the Carrier, either in personam or in rem, unless written notice of the claim with full particulars is delivered to the Carrier within thirty (30) days of termination of the passenger's scheduled cruise and suit is commenced within six (6) months from the day when the cause of action arose, notwithstanding any provision of law of any state or country to the contrary. Passenger agrees that any claim or cause of action brought forth against Carrier shall be litigated solely in a personal capacity and not as member of a class action or in any other representative capacity.

11. Carrier reserves the right, without incurring liability of any kind, to refuse or revoke passage to, or confine to a stateroom, any passenger who in Carrier's sole judgment may be refused admission into a port of landing or into the country of destination, or may be suffering from a contagious disease, or for any other cause may endanger themselves or others, or become obnoxious to others. Any passenger who is refused passage or otherwise denied any advertised benefit or service under this paragraph shall not be entitled to receive any compensation whatsoever and shall become liable for any resulting expenses incurred by the Carrier.

12. Carrier disclaims all liability to Passenger for damages for emotional distress, mental suffering or psychological injury of any kind not resulting from a physical injury to that passenger, nor from that passenger having been at risk of actual physical injury, nor intentionally inflicted by the Carrier. On cruises that neither embark, disembark nor call at any U.S. port, Carrier shall be entitled to any and all limitations and immunities provided under the Athens Convention Relating to the Carriage of Passengers and Their Luggage by Sea of 1974, as amended by the Protocol to the Convention Relating to the Carriage of Passengers and Their Luggage by Sea of 1976, which limits Carrier's liability for death or personal injury of a passenger to no more than 46,666 Special Drawing Rights as defined therein (approximately $67,000 U.S. which fluctuates depending on daily exchange rate printed in the Wall Street Journal). In addition, and on all other cruises, Carrier and the vessel shall have the benefit of any statutory limitation of liability or exoneration of liability available in the applicable forum, or under any applicable national or international law, including but not limited to Title 46 of the United States Code, Sections 181 through 186.

13. Upon embarkation, the Passenger shall have in his possession and assumes all responsibility for obtaining all visas, passports, certified birth certificates, travel and health documents required by any governmental authority, and if he fails to do so Carrier shall have no further obligation to transport or to furnish transportation to the passenger. Passengers are advised to consult their travel agent or the appropriate governmental authority concerning required documentation for travel. Passenger shall indemnify Carrier for all penalties, fines, charges, losses and expenses imposed upon or incurred by Carrier due to passenger's failure to have proper documentation or otherwise comply with applicable laws or regulations of any kind, or imposed by governmental authorities. Any stamps on tickets, customs, excise or other taxes or fines on passenger or Carrier resulting from passenger's conduct, embarkation expenses, and all expenses of such a nature are to be paid by passenger. Carrier shall not be liable to refund passenger's fare or for any other damages or expenses if passenger is prohibited from boarding due to lack of proper documents.

14. Passenger will not be liable to pay nor entitled to receive any general average contribution in respect to property taken with them on the vessel.

15. Should any provision of this Contract be deemed invalid for any reason, said provision is deemed to be severed from this Contract and shall be of no effect, but all remaining provisions herein shall remain in full force and effect.

16. The passenger shall be liable to and shall reimburse Carrier for all damages to the vessel and its furnishings and any equipment or property of the Carrier caused directly or indirectly, in whole or in part, by any act or omission of the passenger, whether willful or negligent. The passenger shall further indemnify the Carrier and each and all of their agents or servants against all liability whatsoever arising from any personal injury, death or damage or loss whatsoever caused directly or indirectly, in whole or in part, by any willful or negligent act or omission on the part of the passenger.

17. The passenger agrees that any travel agent utilized by passenger in connection with the purchase of the cruise or issuance of this Contract, or for any related or incidental air or ground transportation or excursions, is solely passenger's agent and passenger shall remain liable to Carrier for the full applicable cruise fare. Carrier shall not be responsible for any representations, insolvency or other conduct of a travel agent, including but not limited to such agent's failure to remit any portion of the cruise fare to Carrier, or to remit any refund to the passenger. Passenger agrees that receipt of any refunds or notices by passenger's travel agent, including this Contract, shall constitute receipt by passenger.

18. Carrier reserves the right to increase fares without prior notice. In such event passenger has the option to accept and pay such increase, or to cancel passenger's reservation without penalty

19. Carrier shall not be liable for any injuries or damages which occur while participating in athletic or recreational activities aboard the vessel or onshore at any port of call, including, but not limited to, passenger participation in snorkeling programs or passenger usage of any paddle ball, gymnasium, jogging, swimming, diving, health club and sauna facilities. By utilizing said facilities, passenger agrees to assume all risks arising therefrom and does hereby fully release and discharge Carrier from any and all claims, demands, damages, causes of action, present or future, whether the same be known, anticipated or unanticipated, resulting from or arising out of passenger's use or intended use of said facilities.

20. Passenger acknowledges that medical care while on a cruise ship may be limited or delayed and the ship may travel to destinations where medical care is unavailable. Therefore, every passenger warrants that he and those for whom he is responsible for are fit to travel. Any condition of the passenger that may require special attention or treatment of any kind must be reported to Carrier when reservation is requested. A medical certificate certifying fitness for travel may be required of any passenger at Carrier's request. Carrier reserves the right to refuse passage to women in advanced stages (third trimester) of pregnancy. Passengers with special needs are advised that certain international safety requirements and U.S. Coast Guard Regulations may cause difficulty for mobility-impaired persons or persons with severely impaired sight and/or hearing. Passengers requiring the use of a wheelchair must provide their own junior/adult standard size wheelchair (22 1/2 inches wide), as any wheelchairs available on the vessel are for emergency use only. Carrier reserves the right to refuse or revoke passage to anyone who fails to notify Carrier of any physical or emotional condition which may require special assistance or accommodation, or who is, in the sole judgment of Carrier, as a result of such condition unfit for travel, or who may require care, treatment or attention beyond that which Carrier can provide. In such circumstances Carrier shall have no liability to the passenger whatsoever. Passengers may not be able to participate in certain activities or programs either aboard the vessel or onshore at ports of call if to do so would create a risk of harm to any passenger.

21. Cancellation fees for cruise, air, land and other charges apply to all passengers on the reservation. Cancellation fees for air, land and other add-on charges will apply even if the reservation is not cancelled in full. Gateway changes for air and name changes for cruise, air, land and other add-ons are considered cancellations of those items. Cancellations must be telephoned to our Reservations Department. Depending on when the cruise is cancelled, cancellation charges will be assessed per the Terms and Conditions of the cruise brochure. Cancellation charges are subject to change without notice. Air tickets issued by our Air/Sea Department for passengers on our Air/Sea Programs are refundable only to Carrier. Group passenger policies may differ and payment and cancellation charges may differ by promotion. Refer to your travel agent, group booking agreement or promotion for specific terms and conditions.

22. Except as otherwise specified herein, this contract shall be governed in all respects by the General Maritime Law of the United States and, only when not inconsistent with the provisions of this Contract or U.S. maritime law, the laws of the State of Florida. It is hereby agreed that any and all claims, disputes or controversies whatsoever arising from, related to, or in connection with this Contract or the transportation furnished hereunder shall be commenced, filed and litigated, if at all, before the United States District Court for the Southern District of Florida in Miami, or as to those lawsuits to which the Federal Courts of the United States lack subject matter jurisdiction, before a court located in Miami-Dade County, Florida, U.S.A., to the exclusion of the Courts of any other country, state, city or county.

23. Passenger consents to Carrier's use and display of Passenger's likeness in any video, photograph or other depiction for any purpose, commercial or otherwise, without compensation or liability of any kind.